UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN BILLINGSLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:13CV819 HEA |
| | ) | |
| ST. JOSEPH HEALTH CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment, [Doc. No. 37]. Plaintiff has not responded to the Motion. For the reasons set forth below, the Motion is granted.

**Facts and Background**[1]

On September 13, 2012, the St. Charles County Circuit Court entered an Order for 96 Hour Detention, Evaluation and Treatment and Warrant in Cause No. 1211-MH00135, styled *In the Matter of Brian K. Billingsley*. *Detention Order*. By its Detention Order, the Court ordered the St. Charles County Sheriff to "take

[1] Defendant has filed a Statement of Uncontroverted Facts. Plaintiff, in contravention of this Court's Local Rule 7-4.01(E), failed to specifically controvert any of Defendant's facts. Likewise, Plaintiff failed to present his own Statement of Uncontroverted Facts. Consequently, Defendant's Statement of Uncontroverted Facts is taken as admitted by Plaintiff.

[Plaintiff] into custody and transport [Plaintiff] to: ST JOSEPH HOSPITAL IN ST. CHARLES." Plaintiff was transferred from the St. Charles County Department of Corrections to St. Joseph Health Center.

On September 14, 2012, Defendants Baumgarte, Polster and Witterholt were on-duty police officers with the City of St. Charles Police Department. At approximately 9:47 a.m., the Officers were dispatched to the psychiatric unit of the St. Joseph Health Center. Following their arrival at the Center, the Officers made contact with Gayle Reneer, Executive Director of Behavioral Health, and Craig Yatsko, Security Team Leader for the Center. Prior to entering the Center's psychiatric unit, Defendants were told by Reneer that Plaintiff was on a 96 hour commitment order from the St. Charles County Department of Corrections, that Plaintiff had barricaded the door to his room, No. 213, with a bed and that Plaintiff had ripped a metal paper towel dispenser off a wall in the room.

Plaintiff admits that on September 14, 2012, while at the Center, he barricaded himself in the Room.

Defendants, also prior to entering the psychiatric unit, were told by Yatsko that Plaintiff had possibly made a "shank" out of the Metal Dispenser, that Plaintiff had threatened to kill anyone who came into the room and that the Center's staff had been attempting to subdue Plaintiff for approximately two (2) hours.

Having been advised that Plaintiff possibly had a weapon, Defendants refused to enter the Center's psychiatric unit without their duty weapons. At approximately 9:58 a.m., Defendants, having been authorized by Reneer to carry their duty weapons, entered the Center's psychiatric unit. At approximately 9:58 a.m., an SSM security officer unlocked the observation door to the room while the Officers stood outside the room in the hallway of the Center's psychiatric unit.

After the observation door was opened, water began pouring out of the room into the hallway, and Defendants observed the following within the room: water spraying from a sprinkler head in the ceiling; water pooling on the floor; exposed electrical wires from electrical sockets near the pooling water; and Plaintiff brandishing the metal dispenser while partially concealed within the bathroom immediately to the left inside the room.

After the observation door was opened, Defendant Polster gave repeated, oral commands from the hallway to Plaintiff to show his hands, place them behind his back and lay on the ground. Plaintiff failed to comply with Polster's repeated, oral commands for Plaintiff to show his hands, place them behind his back and lay on the ground.

Prior to Defendants entering the room, Plaintiff repeatedly swung the metal

dispenser at Defendants and struck Polster with the metal dispenser. Prior to Defendants entering the room, and while Plaintiff continued to oppose Polster's repeated, oral commands and continued to swing the metal dispenser at Defendants, Defendant Witterholt attempted several times to spray his duty OC Spray at Plaintiff, which attempts were ineffective given Plaintiff's concealed position within the room's bathroom.

Prior to Defendants entering the Room, Polster orally advised Plaintiff he would be tased if he failed to comply with Polster's commands. Polster then discharged the prongs from his duty taser at Plaintiff and administered one cycle.

Plaintiff, upon making contact with the prongs of Polster's duty taser, collapsed to the ground.

Defendant Baumgarte covered Defendant Polster during the discharge of Polster's duty taser through the display of Baumgarte's duty pistol.

At approximately 10:01 a.m., after Defendant Polster successfully administered one cycle of his duty taser, Defendant Witterholt removed the bed obstructing the room's door, and Defendants entered the room. After they entered the room, Polster gave repeated, oral commands for Plaintiff to place his hands behind his back. Plaintiff failed to comply with Polster's commands, kicked his legs and attempted to stand while unsecured by Defendants. With Plaintiff attempting to stand despite Polster's repeated commands, and while Plaintiff was

not yet secured by Defendants, Polster discharged one cycle of his taser upon Plaintiff. On September 14, 2012, Plaintiff was tased a total of two (2) times.

After Polster's second taser discharge, Witterholt attempted to physically secure control of Plaintiff's body, which was wet and slippery. Plaintiff physically resisted Witterholt's attempt to secure control of Plaintiff's body within the room.

While in the room, Witterholt secured Plaintiff's arms with his duty handcuffs. Defendants attempted to physically move Plaintiff's body out of the room through the observation door and into the hallway. Defendants' attempts to physically move Plaintiff's body through the observation door and into the hallway were physically resisted by Plaintiff.

At approximately 10:03 a.m., Defendants moved the resisting Plaintiff into the hallway. After being removed from the room, Plaintiff continued to resist attempts by Witterholt to secure Plaintiff's body against the floor. At approximately 10:05 a.m., Plaintiff was administered sedatives by a member of the Center's staff.

During the course of the aforementioned events, Defendants believed their safety and the safety of Plaintiff, the Center's staff and other patients was imminently threatened by Plaintiff's concealment and failures to comply with oral commands, Plaintiff's brandishing and use of a weapon, and the presence of

standing and spraying water which created an unstable environment and a potential for electrocution given the proximity to exposed electrical wires.

Given Defendants' concerns for their safety and the safety of Plaintiff, the Center's staff and other patients, Defendants believed resolution of the situation in a timely manner was paramount.

At approximately 10:06 a.m., Polster and Witterholt moved Plaintiff from the hallway floor onto a gurney provided by the Center. At approximately 10:07 a.m., Plaintiff was wheeled out of the Center's psychiatric unit on a gurney.

Reneer advised Defendants that the St. Charles County Department of Corrections agreed to accept Plaintiff. At approximately 10:18 a.m., Max Penberthy, police officer with the City of St. Charles arrived at the Center with a City of St. Charles Police Department transportation vehicle. Plaintiff physically resisted Defendants' efforts to load Plaintiff into the vehicle. Prior to Plaintiff being loaded into the vehicle, and due to Plaintiff's continued physical resistance, Witterholt secured Plaintiff's legs with plastic flex cuffs.

From the time Defendants arrived in the hallway outside the room until Plaintiff was secured to the gurney, and during the course of attempting to secure control over Plaintiff, Witterholt received a laceration on his wrist and Polster received a laceration on his head.

Witterholt and Penberthy escorted Plaintiff in the vehicle to the St.

Charles County Department of Corrections. At approximately 10:30 a.m., Witterholt and Penberthy were met at the County Jail by St. Charles County Department of Corrections staff.

Plaintiff did not advise any member of the St. Charles County Department of Corrections' staff of any injury or any physical pain. Plaintiff was photographed by James Arnold, police officer with the City of St. Charles, in the sally port of the County Jail. Photographs taken of Plaintiff by Arnold show two, separate marks on Plaintiff's back from taser prongs and bruising on Plaintiff's shoulder.

Custody of Plaintiff was transferred by Wittherholt to the St. Charles County Department of Corrections.

From the time Defendants arrived in the hallway outside the room until Plaintiff was released to the custody of the St. Charles County Department of Corrections, Plaintiff did not advise any of the Defendants of any injury or any physical pain. From the time Defendants arrived in the hallway outside the room until Plaintiff was released to the custody of the St. Charles County Department of Corrections, Plaintiff did not advise Penberthy, Arnold, members of the Center's staff or members of the St. Charles County Department of Corrections' staff of any injury or any physical pain. From the time Defendants arrived in the hallway outside the room until Plaintiff was released to the custody of the St. Charles County Department of Corrections, none of the Defendants observed any injury to

Plaintiff other than the two taser prong marks and bruising to Plaintiff's shoulder. From the time Penberthy arrived at the Center until Plaintiff was released to the custody of the St. Charles County Department of Corrections, Penberthy did not observe any injury to Plaintiff other than the two taser prong marks and bruising to Plaintiff's shoulder. From the time Defendants arrived in the hallway outside the room until Plaintiff was released to the custody of the St. Charles County Department of Corrections, none of the Defendants kicked Plaintiff, whether in the head, back or otherwise, or used any racial slurs directed to Plaintiff. From the time that the Defendants arrived in the hallway outside the room until Plaintiff was released the custody of the St. Charles County Department of Corrections, none of Plaintiff's teeth were broken.

At approximately 11:00 a.m., Officer Arnold arrived at the Center and subsequently took several photographs of the damage in the hallways and inside Plaintiff's prior Room.

**Summary Judgment Standard**

Summary judgment is appropriate when there exists no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden to establish both the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Once the moving party

has met this burden, the nonmoving party may not rest on the allegations in his pleadings but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Krenik v. Le Sueur,* 47 F.3d 953, 957 (8th Cir. 1995). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)." *Hitt v. Harsco Corp.,* 356 F.3d 920, 923 (8th Cir. 2004). To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.' *Wilson v. Int'l Bus. Machs. Corp.,* 62 F.3d 237, 241 (8th Cir. 1995) (quotation omitted)." *Putman v. Unity Health System,* 348 F.3d 732, 733-34 (8th Cir. 2003). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323.

**Discussion**

Plaintiff brought this action pursuant to 42 U.S.C. 1983 against the remaining Defendants in their individual capacities claiming Defendants violated his rights under the 8th and 14th Amendments. Plaintiff claims Defendants held him at gun point, maced him, tased him twice, kicked him repeatedly, and called

him racial slurs. Plaintiff further claims Polster held him to the floor while Witterholt kicked him in the head, back and side, which resulted in Plaintiff's tooth being kicked out and his back and side bruised. Plaintiff claims that Polster and Witterholt used excessive force. Plaintiff's claims against Defendant Baumgarte are based on his being "the superior officer on the scene" and "responsible for his officer and their conduct."

Defendants argue they are entitled to qualified immunity.

> "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards,* 566 U.S. ——, ——, 132 S.Ct. 2088, 2093, 182 L.Ed.2d 985 (2012). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ibid.* (brackets and internal quotation marks omitted). "When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al–Kidd,* 563 U.S. ——, ——, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.,* at ——, 131 S.Ct., at 2083.

*Taylor v. Barkes,* ___ U.S. ___, 135 S.Ct. 2042, 2044 (2015).

Qualified immunity protects a government official from liability "unless the official's conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir.2006) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).

To determine whether an official is entitled to qualified immunity, the Court

asks the following two-part question: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Brown v. City of Golden Valley,* 574 F.3d 491, 496 (8th Cir.2009) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). The Court may decide which determination to make first, *Pearson v. Callahan,* 555 U.S. 223, 235–36 (2009), and "the defendants are entitled to qualified immunity unless the answer to both of these questions is yes." *McCaster v. Clausen,* 684 F.3d 740, 746 (8th Cir.2012).

"A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright,* 636 F.3d 396, 399 (8th Cir.2011) (internal quotation marks and citation omitted). "A general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Winslow v. Smith,* 696 F.3d 716, 738 (8th Cir.2012) (internal quotation marks and citation omitted). "The unlawfulness must merely be apparent in light of preexisting law, and officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Nelson v. Correctional*

*Medical Services,* 583 F .3d 522, 531 (8th Cir.2009) (internal quotation marks and citation omitted).

"After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers,* 475 U.S. 312, 319 (1986) (quotation omitted). "The infliction of pain in the course of a prison security measure, therefore, does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Id.* "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian,* 503 U.S. 1, 6–7 (1992); *see Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010). "To defeat a claim of qualified immunity, a plaintiff alleging excessive use of force must present sufficient facts to show that the officer's conduct violated a constitutional right, and he also must establish that the constitutional right was clearly established." *Chambers v. Pennycook,* 641 F.3d 898, 904 (8th Cir.2011). "[W]hen an official's intent is an element of the § 1983 claim, as it is in Eighth Amendment excessive force claims, and [ ] the official has made a properly supported motion for summary judgment

based on qualified immunity, the plaintiff must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." *Burns v. Eaton,* 752 F.3d 1136, 1139 (8th Cir.2014) (internal quotation marks and citation omitted).

Here, Defendants are entitled to summary judgment because the force used on plaintiff was in a good faith effort to protect the staff of the Center, themselves and Plaintiff himself and was not intended to sadistically or maliciously harm Plaintiff. Prior to Defendants' use of force, Plaintiff was aggressive and noncompliant, resistant to orders to cooperate. Plaintiff continued to swing the metal dispenser. Despite Plaintiff's refusal to obey their commands, Defendants used no force on Plaintiff until after he had been warned that he would be tased if he continued to fail to obey Defendant's commands. Plaintiff struck Defendant Pllster at least one time. Given that Defendants used no force until necessary to subdue Plaintiff and regain control over the situation, no reasonable jury could find that the force was used maliciously and sadistically to cause harm in violation of the Eighth Amendment. Although Plaintiff alleged in his Amended Complaint that he was held at gun point, maced twice, kicked repeatedly and called him racial slurs, Plaintiff has produced no evidence to establish these injuries. Plaintiff has presented no affirmative evidence that the force used by Defendants Polster and Witterholt, was applied maliciously and sadistically to cause harm rather than to

restore order in the room. There is no dispute that Plaintiff barricaded the room, nor that he brandished the metal dispenser and struck Polster. There is simply no evidence from which a reasonable jury could infer a malicious motive or find that Defendants violated plaintiff's eighth amendment rights, so the motion for summary judgment based on qualified immunity must be granted. *See Burns*, 752 F.3d at 1139–1140.

With respect to Plaintiff's claim that Defendants were deliberately indifferent to his serious medical needs, Defendants are entitled to judgment as a matter of law.

"'To establish a claim of deliberate indifference to serious medical needs under § 1983, [Plaintiff] must demonstrate that he suffered from an objectively serious medical need and that [the officials] actually knew of but deliberately disregarded the need.' *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir.2013) (citation omitted)." *Turner v. Mull*, 784 F.3d 485, 490 (8th Cir. 2015).

Plaintiff's claims of serious medical needs are unsupported by any evidence. Plaintiff did not advise anyone at the medical center, the County jail staff or Defendants of any physical pain or injury. Plaintiff's claimed injuries are not supported by the photographs taken of Plaintiff when he was returned to the County jail. He had bruising on his shoulder and the taser prong marks on his back. The uncontroverted facts establish that Plaintiff was not kicked in the head

or the face and none of his teeth were broken, nor was his mouth bleeding at the time. Plaintiff has established neither that he suffered from an objectively serious medical need nor that the officials knew of any need and disregarded it.

Moreover, there is no evidence that Defendant Baumgarte even participated in the incident of which Plaintiff complains. The Eighth Circuit has "long held that neither municipal nor supervisory liability may attach in section 1983 actions unless individual liability is first found on an underlying substantive claim. *See Moore v. City of Desloge, Mo.*, 647 F.3d 841, 849 (8th Cir.2011). 'Because [Plaintiff] failed to establish [the officers] violated [his] constitutional rights, [Plaintiff] cannot maintain this action against' …. [the supervisor]." *Id. Schoettle v. Jefferson County*, 2015 WL 3621446, 5 (8th Cir. 2015). Baumgarte cannot be held vicariously liable under § 1983 and is entitled to summary judgment on Plaintiff's claims. *Id.*

**Conclusion**

Plaintiff has failed to respond to Defendant's Motion for Summary Judgment with any evidence that the claims he presented in his Amended Complaint entitle him to the relief requested. Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, [Doc. No. 37], is granted.

**IT IS FURTHER ORDERED** that Defendants' request for attorney's fees is denied.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 23rd day of June, 2015

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE